**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| VICKY TRIGG FIELDS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-24-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Vicky Trigg Fields

on January 20, 2016, and Plaintiff's Opening Brief [DE 16], filed by Plaintiff on July 15, 2016.

Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for

further proceedings. On October 21, 2016, the Commissioner filed a response, and on November

18, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for

remand.

**I.      Background**

On June 24, 2013, Plaintiff filed an application for benefits alleging that she became disabled

on March 17, 2010. Plaintiff's application was denied initially and upon reconsideration. On May

15, 2015, Administrative Law Judge ("ALJ") Margaret Carey held a hearing at which Plaintiff, with

an attorney, and a vocational expert ("VE") testified. On June 26, 2015, the ALJ issued a decision

finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant has not engaged in substantial gainful activity since the application date.

2.      The claimant has severe impairments: osteoarthritis of the neck, obesity,

chronic cystitis, degenerative joint disease of the shoulder, hip, knee, and degenerative disc disease of the spine.

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4.      The claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks.  The claimant must never climb ladders, ropes, or scaffolds but may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.  She is limited to work that is only occasionally exposed to unprotected heights, moving mechanical parts, and operation of a motor vehicle, and she can only work occasionally in environments of slippery or uneven surfaces.  As a result of the claimant's bladder issues, she must be allowed 5-minute breaks every two hours which can be accommodated by routine breaks, for the use of the restroom.  The claimant must be allowed a sit/stand option such that after 1 hour of standing the claimant could sit but not be off task and then sit for an hour and stand back up.  She is limited to only occasional overhead reaching with the left upper extremity.  Finally, the claimant is limited to simple, routine, and repetitive work in low-stress environments with only occasional decision-making.

5.      The claimant is unable to perform any of her past relevant work.

6.      The claimant was a younger individual age 18-49 on the date the application was filed.

7.      The claimant has at least a high school education and is able to communicate in English.

8.      Transferability of job skills is not material to the determiation of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since the date the application was filed.

On November 16, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard or Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v.*

*Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ erred in determining the credibility of Plaintiff, did not according appropriate weight to the opinions of Plaintiff's treating physician, and failed to adequately address some of Plaintiff's impairments. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

A.    Credibility and Mental Health

Plaintiff argues that the ALJ made an improper credibility determination.  An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, but "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)).  The ALJ referred to "a number of issues that call into question" Plaintiff's credibility, but the only one she specifically identifies is "claimant's limited compliance with treatment."  AR 42.  The Commissioner argues that the ALJ had other reasons to consider Plaintiff less than credible and points out inconsistencies in her statements.  However, these inconsistencies do not form the basis of the ALJ's credibility determination and the ALJ did not ask Plaintiff about her perceived non-compliance with treatment. "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."  *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012);  *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ must not draw any inferences about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

This is particularly concerning given Plaintiff's record of mental health difficulties. The ALJ mentioned that Plaintiff sought treatment for depression, but concluded that her "poor compliance detracts from the claimant's allegations" so that "the degree to which these impose limitations on her functional abilities is minimal."  AR 32.  The ALJ failed to address Plaintiff's  diagnoses of

major depression, panic disorder, and post-traumatic stress disorder. However, "[a] diagnosis of 'major depression' means, by definition, that an individual's 'symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 356 (4th ed. text revision 2000)). It appears, however, that the ALJ ignored the diagnoses and disregarded any limitations caused Plaintiff's mental health disorders on the basis of Plaintiff's supposed noncompliance with treatment. Not only did she fail to ask Plaintiff about her noncompliance, as discussed above, but she failed to recognize that failure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity. As the Seventh Circuit has emphasized, "mental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases). In short, the ALJ erred in her treatment of Plaintiff's mental health disorders, and failed to draw a logical bridge from Plaintiff's diagnosed disorders to the conclusion that they would not affect her ability to work.

### B.  Treating Physician

The ALJ also used Plaintiff's perceived noncompliance with treatment as a reason to reject the opinion of her treating physician, Dr. Sheriff. The Commissioner argues that the ALJ's reasons for rejecting his opinion were well-supported.

"A treating physician's opinion regarding the nature and severity of a medical condition is

6

entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744. If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt v. Astrue*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally

inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

In this case, Dr. Sheriff began treating Plaintiff in 2013 and completed a Physical Residual Functional Capacity Questionnaire on March 13, 2015, outlining significant physical limitations in Plaintiff's ability to do work. The ALJ gave his opinion "little weight" as inconsistent with Plaintiff's testimony at the hearing and with treatment notes from Dr. Sheriff and other contemporaneous appointments. The ALJ does not describe or identify any inconsistencies except to say that "[t]he internal inconsistencies of the claimant reporting steadied improvement with missed appointments prevalent throughout the records of Dr. Sheriff detract from his opinions." AR 41. The ALJ appears to conclude that Plaintiff's failure to fully comply with treatment makes the treating doctor's notes about the treatment she did undergo less than credible. Not only is this logically inconsistent, but, as described above, the ALJ failed to ask Plaintiff about her perceived failure to seek treatment. A vague description of "inconsistencies" does not rise to the level of substantial conflicting evidence, and is an insufficient articulation of the reasons for discounting his opinion, particularly since the ALJ failed to address Dr. Sheriff's treating relationship with Plaintiff, his specialization, or any other factors that should be considered in determining the weight given a treating physician's opinion.

On remand, the ALJ is reminded of the directive to give controlling weight to the opinion of a treating physician or to explain the reason not to.

C.      Other Impairments

Plaintiff argues that the ALJ also failed to explain how, if at all, Plaintiff's bladder condition and abdominal pain were incorporated into the RFC.

"Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez*, 630 F.3d at 698 ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing  20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The ALJ did include a bathroom break requirement in the RFC, but does not explain how she arrived at this particular restriction, particularly since it does not correspond with any limitation as described by a physician or by Plaintiff herself. The ALJ failed to draw a logical bridge from the evidence to her conclusions about the number and frequency of Plaintiff's bathroom breaks. *See Scott*, 297 F.3d at 595 (reminding that the ALJ must build an "accurate and logical bridge from the evidence to his conclusion") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Although the ALJ need not specifically include every limitation alleged by Plaintiff in the RFC, she must consider the combination of impairments, and explain how she incorporated all of symptoms and limitations into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996)); *Golembiewski*, 322 F.3d at 917). This the ALJ failed to do, and this case must be remanded for a new RFC that

incorporates all of Plaintiff's limitations, including an explanation of how the limitations from each of her impairments (particularly her severe impairments, but also those that are not severe), alone and in combination, are taken into account in the RFC.

On remand, the ALJ is instructed to fully review all of the medical evidence in the record and to obtain updated information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p at *4; 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

D.     VE Testimony

Plaintiff also argues that the ALJ erred by basing her analysis on unreliable VE testimony. To determine whether jobs exist in the economy for a claimant's RFC at Step Five, the ALJ will look to job information available from government publications like the DOT. 20 C.F.R. § 404.1566(d). An ALJ may also use a VE to determine which occupations, if any, are compatible with a claimant's RFC. 20 C.F.R. § 404.1566(e). If using a VE, an ALJ has an "affirmative responsibility" to ask whether a vocational expert's testimony conflicts with the DOT and to elicit a "reasonable explanation" for any conflict. S.S.R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008); *Prochaska*, 454 F.3d at 735. If the VE responds that a conflict exists or if a conflict is apparent, an ALJ may rely on the VE's testimony as substantial evidence to support a determination of non-disability only if she resolves the conflict in favor of the VE's testimony and explains why. S.S.R. 00-4p, 2000 WL 1898704, at *4; *Overman*, 546 F.3d at 463.

Plaintiff argues that there was a discrepancy between the DOT number given by the VE and the job title he referred to, making it impossible to determine which job he was claiming Plaintiff could do. Furthermore, Plaintiff argues, the VE failed to state the source of his testimony regarding the occupational statistics he cited, statistics that are not contained in the DOT.

In this case, new VE testimony will likely be required after the credibility and RFC determinations are corrected as described above. Particularly relevant in this case is the Seventh Circuit Court of Appeals' questioning of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published, and mainly moreover from information from 1977 – 37 years ago," as "[n]o doubt many of the jobs have changed and some have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). The *Browning* court also expressed concern that "[t]here is no official source of number of jobs for each job classification in the *Dictionary of Occupational Titles* . . . [a]nd many of the[ VEs] estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category." *Id*.

The case is being remanded for other reasons described above, and new VE testimony will likely need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that she must incorporate all relevant limitations in her questioning of the VE. In addition, the Court recommends that the ALJ specifically ascertain the source of the VE's opinion that the jobs identified as able to be performed by Plaintiff do, in fact, actually exist in adequate numbers.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 21st day of March, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record